1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    JOSEPH STEVEN THOMASON,

11            Petitioner,                    No. CIV S-04-1996 GEB KJM P

12        vs.

13    D. L. RUNNELS,

14            Respondent.                    FINDINGS & RECOMMENDATIONS

15    _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his July 1, 2002 conviction on

18    charges of assault with a deadly weapon and threatening to inflict great bodily injury and the

19    finding that he had suffered prior felony convictions.  He seeks relief on the grounds that: (1) the

20    trial court abused its discretion by refusing to dismiss a prior "strike" conviction; (2) the evidence

21    is insufficient to support his judgment of conviction; (3) the prosecutor committed misconduct in

22    connection with "discovery obligations;" and (4) his appellate counsel rendered ineffective

23    assistance.  Upon careful consideration of the record and the applicable law, the undersigned will

24    recommend that petitioner's application for habeas corpus relief be denied.

25    /////

26    /////

1

I. <u>Background</u> [1]

Defendant Joseph Steven Thomason was found guilty at a court trial of assault with a deadly weapon (on a two-by-four board) (Pen. Code, § 245, subd. (a)),[FN1] with infliction of great bodily injury under domestic violence circumstances, (§ 12022.7, subd. (e)), and making criminal threats (§ 422).[FN2]  The trial court found defendant had two prior serious felony convictions and four prior prison terms.  (§§ 667, subd. (a), 667, (b)-(I), 1170.12, 667.5, subd. (b).)  (CT 16-20; RT 555)  Defendant was sentenced to two indeterminate 25-year-to-life terms, plus determinate terms of four years (§ 12022.7, subd. (e)), and 10 years (§ 667, subd. (a)).

> FN1 Further statutory references unless otherwise designated are to the Penal Code.

> FN2  Defendant was acquitted of two earlier assaults on the same victim charged in counts 3 and 4.

* * *

A.  Prior Criminal Record

According to the probation report, in 1975 defendant shot a man with a sawed-off shotgun and pleaded guilty to assault with a deadly weapon.  (§ 245, subd. (a)(1).)  Defendant was committed to the California Youth Authority in 1976.

Following convictions in 1978 of felony commercial burglary (§ 459) and in 1981 of misdemeanor battery on a peace officer (§§ 242/243), defendant was sent to state prison in 1982 for felony receiving stolen property (§ 496).

In 1985, defendant was convicted of assault with a deadly weapon (pointing a handgun at a victim).  In 1986, defendant was sentenced to prison for this offense.

In 1989, defendant pleaded guilty to evading police (Veh. Code, § 2800.2) and was sentenced to prison.

In 1991 and 1992, defendant pleaded guilty to more misdemeanors – resisting an officer and reckless driving.  (§ 148; Veh. Code, § 23103.)

/////

---

[1]  This statement of facts is taken from the August 18, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Op.), lodged in this action on February 8, 2007.  <u>See</u> Respondent's Lodged Document (Lodg. Doc.) 2.

In 1993, defendant was again sentenced to prison for driving a car without permission and receiving stolen property.  (§ 496; Veh. Code, § 10851.)

In 1996, defendant was sentenced to prison for possessing cocaine base.

In sum, defendant was admitted into the Department of Corrections' custody on July 27, 1982, and ultimately "maxed out" on September 27, 2001, having served time for 16 separate violations.

B.  Current Offense

Defendant, age 44, has no employment history and acquired a daily cocaine habit at the age of 39.  His prospects appear to be limited.

Following his latest parole in 2001, defendant dated the victim, Lynn G., for about nine months.  Defendant cohabited with Lynn G., in her home, for several months.

The couple separated in late December 2001.  When they separated, defendant told her she could not leave her house.  On January 8, 2002, defendant saw Lynn G. outside in her yard. Defendant jumped over her fence and grabbed a two-by-four "stick" about four feet long.  Defendant hit her in the face with his fist.  Then he hit her with the two-by-four on her arm and wrist and on her leg.  Defendant told her if he saw her outside again something "could happen" to her, which the victim thought meant great bodily harm.  Defendant had told her before he once shot a man.

A neighbor heard the screams, saw the assault, and called 911.

Medical attention revealed Lynn G.'s wrist was broken.

After an exchange of letters between defendant in jail and Lynn G., Lynn G. wrote the district attorney's office that she wished to drop the case.  Lynn G. was reluctant to testify against defendant.

In his defense, defendant presented testimony from Lynn G.'s daughter, who testified her mother had a reputation as a fighter. Richard Moore testified that Lynn G. assaulted him on the street with a tire iron, without provocation, the first and only time he met her.

C.  Sentencing

Defense counsel asked the trial court to exercise its discretion to strike both serious felony convictions from 1975 and 1985, both for assault with a deadly weapon, which were remote and

1    "dissimilar" to the current offense.  Defense counsel pointed out
     that the prior convictions involved assaults with guns – a sawed-off
2    shotgun and a handgun – and the current assault only involved a

3    board.  The prosecutor argued that defendant was not outside the
     spirit of the "Three Strikes" law.
4
     In its ruling, the trial court detailed defendant's felony record from
5    1975 until the current convictions.  The trial court explained that it
     would have seriously considered defendant's motion based on the
6    age of the prior convictions were it not for defendant's continuing
     criminal record.  The trial court declined to strike a prior serious
7    felony conviction.

8    Op. at 1-4.

9    II.  Standards for a Writ of Habeas Corpus

10          An application for a writ of habeas corpus by a person in custody under a

11   judgment of a state court can be granted only for violations of the Constitution or laws of the

12   United States.  28 U.S.C. § 2254(a).

13          Federal habeas corpus relief is not available for any claim decided on the merits in

14   state court proceedings unless the state court's adjudication of the claim:

15          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established federal law, as
16          determined by the Supreme Court of the United States; or

17          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
18          State court proceeding.

19    28 U.S.C. § 2254(d).

20          Although "AEDPA does not require a federal habeas court to adopt any one

21   methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which

22   guide its application.

23   /////

24   /////

25   /////

26   /////

4

1   First, the "contrary to" and "unreasonable application" clauses are different.  As

2   the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in Williams [v. Taylor,
> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

10  Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state

11  court's decision was either contrary to or an unreasonable application of federal law.  Woodford

12  v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).  It is appropriate to look to lower court

13  decisions to determine what law has been "clearly established" by the Supreme Court and the

14  reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597,

15  598 (9th Cir. 2000).

16  Second, the court looks to the last reasoned state court decision as the basis for the

17  state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  So long as the state

18  court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter

19  how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

20  However, when the state court does not issue a "reasoned opinion," this court must undertaken

21  an independent review of the claims.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

22  Third, in determining whether a state court decision is entitled to deference, it is

23  not necessary for the state court to cite or even be aware of the controlling federal authorities "so

24  /////

25  /////

26  /////

5

1   long as neither the reasoning nor the result of the state-court decision contradicts them." Early v.

2   Packer, 537 U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary

3   statement" of federal law, so long as the fair import of its conclusion is consonant with federal

4   law.  Id.

5   III.  Petitioner's Claims

6         A.  Failure to Strike Prior Convictions

7               Petitioner's first claim is that the trial court abused its discretion when it declined

8   to dismiss either or both of his prior serious felony "strike" convictions pursuant to People v.

9   Superior Court (Romero), 13 Cal.4th 497 (1996).[2]  See Points and Authorities attached to

10  Petition (P. & A.) at page marked  typewritten "7."  Petitioner also argues he is "outside the

11  spirit" of California's Three Strikes Law because: (1) his two prior serious felony convictions

12  occurred 26 years and 17 years, respectively, prior to the instant convictions; (2) none of

13  petitioner's subsequent felony convictions was "for crimes considered violent or serious under

14  California law;" and (3) the victim did not wish to prosecute petitioner and testified that the

15  incident was "not a big deal."  Id. at 9.

16              This claim essentially involves an interpretation of state sentencing law.  "It is not

17  the province of a federal habeas court to reexamine state court determinations on state law

18  questions."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The standard of review for a federal

19  habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or

20  treaties of the United States (citations omitted)."  Id.  So long as a state sentence "is not based on

21  any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated,

22  or enhanced by indigency, the penalties for violation of state statutes are matters of state

23  concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a

24  _____

25      [2]  In Romero, the California Supreme Court held that in cases charged under the Three
    Strikes Law, a court could exercise the power to dismiss prior convictions at sentencing in
26  furtherance of justice.  13 Cal.4th at 530.

1    showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

2    does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  The

3    Ninth Circuit has specifically refused to consider state law errors in the application of state

4    sentencing law.  See, e.g., Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on

5    other grounds, Mayle v. Brown, 538 U.S. 901 (2003) (Romero claim "is not cognizable on

6    federal habeas review").

7            The trial court's decision not to strike petitioner's prior serious felony convictions

8    was not fundamentally unfair and did not result in a due process violation under the

9    circumstances of this case.  The sentencing judge understood his discretion to strike the priors

10   pursuant to Romero but declined to do so after reviewing petitioner's criminal record.  Reporter's

11   Transcript on Appeal (RT) at 560-561.  The judge decided not to dismiss any of petitioner's prior

12   "strikes" because of petitioner's "continuing course of criminal conduct."  Id. at 561.  This

13   decision was not unreasonable.  After a careful review of the sentencing proceedings, the

14   undersigned finds no federal constitutional violation in the state trial judge's exercise of his

15   sentencing discretion.

16           In rejecting petitioner's arguments, the California Court of Appeal concluded that

17   "the trial court did not abuse its discretion in declining to strike a prior conviction" because

18   petitioner's "28-year history of crimes and his current violent and serious felony convictions,

19   place him squarely within the ambit of the three strikes law."  Op. at 5.  This decision with

20   respect to the application of state sentencing law is not contrary to or an unreasonable application

21   of federal law and does not justify federal habeas relief.  Accordingly, petitioner is not entitled to

22   relief on this claim.[3]

23

24           [3]  In the traverse, petitioner argues that the trial judge's decision not to dismiss one of his
     prior felony convictions constituted a breach of the plea agreements petitioner entered into in

25   connection with his 1975 and 1985 convictions.  Traverse at 2-3.  This claim is not contained in
     the petition.  To the extent petitioner is attempting to belatedly raise a new claim in this manner,

26   it must be rejected.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse

1          B.  Underline Insufficient Evidence

2          Petitioner's next claim is that the trial court improperly evaluated the evidence at

3   his trial.  P. & A. at consecutive handwritten pages 7 through 10.  Petitioner frames these

4   allegations as a claim of "judicial bias," apparently on the theory that the trial judge evaluated the

5   evidence in a "biased" fashion.  Id.  However, a review of petitioner's allegations and legal

6   citations reflects that petitioner is actually claiming the evidence at his trial was insufficient to

7   support the verdict.  In support of his claim of insufficient evidence, petitioner describes

8   evidence that casts doubt on the credibility of the victim's testimony and the corroborating

9   testimony of the victim's neighbor.  Id.  Petitioner claims that he "suffer[s] from tainted

10  evidence, false testimony, and a bias (sic) interpretation of the facts," in violation of his

11  Fourteenth Amendment right to due process.  Id. at consecutive handwritten page 10.

12         Petitioner raised these claims for the first time in a petition for writ of habeas

13  corpus filed in the California Superior Court.  Lodg. Doc. 5.  In that petition, petitioner's claims

14  were characterized by the court as "the trial court erred in relying on the victim's testimony

15  because it was false" and that "the evidence was insufficient to support the judgment."  See

16  Lodg. Doc. 6.  The Superior Court rejected both of these claims.  With respect to petitioner's first

17  argument, the Superior Court reasoned as follows:

18         The trial court acted as trier of fact in the court trial of the case, and
           as trier of fact had discretion to weigh the credibility of all or part
19         of the victim's testimony.  The portion of trial transcript that
           petitioner attaches to the petition evidences that the trial court
20         properly exercised that discretion, and no error is shown.

21  Id. at 1.

22

23  is not the proper pleading to raise additional grounds for relief); Greenwood v. Fed. Aviation
    Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically
24  and distinctly in a party's opening brief").  Even if this claim had been properly raised,
    petitioner's conclusory allegations fail to demonstrate a constitutional violation.  See Jones v.
25  Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by
    a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20,
26  26 (9th Cir. 1994)).  Accordingly, petitioner is not entitled to relief on any such claim.

1    The Superior Court also rejected petitioner's second argument, reasoning as

2    follows:

3        The portion of trial transcript that petitioner attaches to the petition
         shows the trial court detailing the evidence the court had heard
4        with regard to each charge, that sufficiently showed each charge.
         Petitioner does not show that the evidence was otherwise.

5

6    Id. at 2.

7    The Due Process Clause of the Fourteenth Amendment "protects the accused

8    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

9    constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

10   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

11   favorable to the prosecution, any rational trier of fact could have found the essential elements of

12   the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also

13   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under

14   Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

15   reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

16   U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

17   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

18   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005), cert. denied, 546 U.S.

19   1137 (2006).  In order to grant the writ, the habeas court must find that the decision of the state

20   court reflected an objectively unreasonable application of Jackson and Winship to the facts of the

21   case. Id. at 1275.

22   It is the province of the jury to "resolve conflicts in the testimony, to weigh the

23   evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443

24   U.S. at 319.  If the trier of fact could draw conflicting inferences from the evidence, the court in

25   its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465,

26   469 (9th Cir. 1994).  "The relevant inquiry is not whether the evidence excludes every hypothesis

1  except guilt, but whether the jury could reasonably arrive at its verdict." <u>United States v.</u>

2  <u>Dinkane</u>, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting <u>United States v. Mares</u>, 940 F.2d 455, 458

3  (9th Cir. 1991)); <u>see also</u> <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).

4           The victim testified that petitioner assaulted her in her yard with a two-by-four

5  and that she sustained injuries, as described above in the "background" section.  RT 79-107.  She

6  also testified that petitioner made statements she interpreted as a threat that he would inflict great

7  bodily injury on her if she left her house.  RT 82-84.  The victim's neighbor testified she

8  witnessed the assault, although she was unable to identify either the victim or the perpetrator.

9  RT 284-298.  Based on the testimony of these two witnesses, and specifically taking into account

10  the victim's credibility problems and the fact that the neighbor could not identify the parties to

11  the altercation, the trial court found petitioner guilty on counts one and two: assault with a deadly

12  weapon and threatening the victim with great bodily injury.  RT 538-542.  Viewing the evidence

13  in the light most favorable to the verdict, the undersigned concludes that a rational trier of fact

14  could have found beyond a reasonable doubt that petitioner was guilty of these two charges,

15  based on the evidence introduced at petitioner's trial.  The fact that the victim's credibility was

16  impeached, or that there was evidence that could have supported a verdict of acquittal, is not

17  dispositive of this claim.  Indeed, on habeas corpus review this court may not re-weigh the

18  credibility of the witnesses at petitioner's trial.  <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995)

19  ("under <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of

20  review").  A fact finder's credibility determinations are entitled to "near-total deference under

21  <u>Jackson</u>." <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).

22           There was substantial evidence presented at trial to support petitioner's conviction

23  on the two charges of which he was convicted.  Accordingly, the state court's decision denying

24  this claim is not "objectively unreasonable" and should not be set aside.  <u>Woodford v. Visciotti</u>,

25  537 U.S. 19, 25 (2002).  <u>See</u> <u>also</u> 28 U.S.C. § 2254(d)(1).

26  /////

1    C.  Prosecutorial Misconduct

2            Petitioner claims the prosecutor failed to turn over relevant discovery concerning

3    the victim's medical records, thereby committing prosecutorial misconduct.   The background to

4    this claim is as follows.

5            Prosecution witness Dr. Bourne testified regarding an examination he conducted

6    of the victim in 2002 concerning the injuries she sustained in the altercation on January 8, 2002.

7    RT 353-371.  During his testimony, Dr. Bourne stated he had seen the victim two times in 2002

8    for her injuries and also in 1998 for an illness (irritable bowel syndrome) "completely unrelated"

9    to the injuries sustained in the assault.  RT 356, 358.  Dr. Bourne did not have the 1998 records

10   in the courtroom.  RT 358.  Petitioner's counsel complained that he had requested all the victim's

11   medical records from the prosecutor but that he had not received the 1998 records.  RT 356-357,

12   372.  The prosecutor responded that he had given the defense all of the records in his possession

13   and noted that the defense could have subpoenaed the records from the hospital.  RT 357, 372.

14   He also pointed out that defense counsel's subpoena only requested the victim's medical records

15   for "January or February 2002."  RT 373.  Petitioner's counsel stated he was not "saying [the

16   prosecutor] hid them from me."  Id.  However, he argued that he had requested the records.  Id.

17   The trial court informed petitioner's counsel he had a right to the records pertaining to the

18   victim's 1998 visit to the medical clinic, that the court would order them for the defense upon

19   receiving a proposed order, and that defense counsel could cross-examine Dr. Bourne about the

20   1998 matter if he wished to do so.  RT 356-357, 373-374.  Defense counsel did not cross-

21   examine Dr. Bourne regarding the victim's 1998 visit to the clinic and there is no record of a

22   later court order for discovery of the records related to that visit.

23           In Brady v. Maryland, the United States Supreme Court held "that the suppression

24   by the prosecution of evidence favorable to an accused upon request violates due process where

25   the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith

26   of the prosecution."  373 U.S. at 87; see also Bailey v. Rae, 339 F.3d 1107, 1113 (9th Cir. 2003).

1   There are three components of a <u>Brady</u> violation:  "[t]he evidence at issue must be favorable to

2   the accused, either because it is exculpatory, or because it is impeaching; the evidence must have

3   been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

4   <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>see</u> <u>also</u> <u>Banks v. Dretke</u>, 540 U.S. 668, 691

5   (2004); <u>Silva v. Brown</u>, 416 F.3d 980, 985 (9th Cir. 2005).  In order to establish prejudice, a

6   petitioner must demonstrate "'there is a reasonable probability' that the result of the trial would

7   have been different if the suppressed documents had been disclosed to the defense."  <u>Strickler</u>,

8   527 U.S. at 289.  "The question is not whether petitioner would more likely than not have

9   received a different verdict with the evidence, but whether "in its absence he received a fair trial,

10  understood as a trial resulting in a verdict worthy of confidence."  <u>Id.</u> (quoting <u>Kyles v. Whitley</u>,

11  514 U.S. 419, 434  (1995)); <u>see</u> <u>also</u> <u>Silva</u>, 416 F.3d at 986 ("a <u>Brady</u> violation is established

12  where 'the favorable evidence could reasonably be taken to put the whole case in such a different

13  light as to undermine confidence in the verdict.'").

14          Petitioner has failed to demonstrate that the prosecutor violated <u>Brady v.</u>

15  <u>Maryland</u> by failing to turn over medical records related to the victim's 1998 visit to the medical

16  clinic.  It does not appear that these records, which were "completely unrelated" to the injuries

17  sustained in the altercation, were favorable to petitioner, either because they were exculpatory or

18  impeaching.  It is noteworthy, in this regard, that petitioner's counsel chose not to obtain a court

19  order for the records even after he was advised he could do so.  Petitioner's speculative claim

20  that the records were "possibly material evidence favorable to his defense" is not sufficient to

21  establish materiality.  <u>See</u> <u>Phillips v. Woodford</u>, 267 F.3d 966, 987 (9th Cir. 2001) ("mere

22  suppositions" regarding materiality and deliberate suppression of evidence are insufficient).

23  There also is no evidence that these records were suppressed by the state.  Petitioner's counsel

24  conceded as much.  RT 373.

25          Finally, petitioner has failed to show prejudice.  There is no "reasonable

26  probability" the result of the trial would have been different if the 1998 medical records had been

12

1  disclosed to the defense. <u>Strickler</u>, 527 U.S. at 289. Petitioner argues the defense strategy was to

2  discredit the victim's credibility by "establishing her history of drug abuse and her history of

3  medical prescription drug abuse" and that the missing records might have had some bearing on

4  this issue. Traverse at 7. However, speculation on this point is insufficient to establish

5  prejudice.

6          Petitioner also has failed to demonstrate that the prosecutor's handling of

7  discovery constituted prosecutorial misconduct. A criminal defendant's due process rights are

8  violated when a prosecutor's misconduct renders a trial fundamentally unfair. <u>Darden v.</u>

9  <u>Wainwright</u>, 477 U.S. 168, 181 (1986); <u>Sassounian v. Roe</u>, 230 F.3d 1097, 1106 (9th Cir. 2000).

10  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire

11  proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness

12  as to make the resulting conviction a denial of due process.'" <u>Johnson v. Sublett</u>, 63 F.3d 926,

13  929 (9th Cir. 1995) (citation omitted); <u>see also</u> <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987);

14  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). Relief on such claims is limited to cases

15  in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.

16  <u>Johnson</u>, 63 F.3d at 930 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993)); <u>see also</u>

17  <u>Darden</u>, 477 U.S. at 181-83. Upon a review of the record, it is clear that the discovery violations

18  claimed by petitioner did not result in an unfair conviction, particularly in light of the fact that

19  petitioner was acquitted of two of the charges brought against him.

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1      The California Superior Court rejected petitioner's claim of prosecutorial

2  misconduct, reasoning as follows:

3          Petitioner next claims that the prosecutor committed misconduct in
           giving petitioner late discovery of certain medical information.
4
           Petitioner fails to show prejudice.  Petitioner does not attach any
5          reasonably available documentary evidence to show any evidence
           that could have been uncovered, but was not, due to the late
6          discovery, that would have been reasonably likely to have made a
           difference in the outcome of the trial.  As such, the claim fails.
7

8  Lodg. Doc. 6 at 2 (citations omitted).  The state court's decision in this regard is not contrary to

9  or an unreasonable application of the federal principles set forth above.  Accordingly, petitioner

10  is not entitled to relief on this claim.

11      D.  Ineffective Assistance of Appellate Counsel

12      Petitioner's final claim is that his appellate counsel rendered ineffective counsel

13  by failing to raise meritorious claims on appeal.  Petitioner first contends that the sentencing

14  issue raised by his appellate counsel lacked merit.  P. & A., section entitled "Ground (4)

15  Ineffective Assistance of Appellate Counsel," at consecutive handwritten page 1.  He also states

16  that he asked his appellate counsel to raise issues regarding "judicial error, prosecutorial

17  misconduct and ineffective assistance of counsel," as well as issues concerning alleged perjury

18  committed by the victim during her testimony at petitioner's trial.  Id. at consecutive pages 1, 2.

19  In a letter to petitioner, appellate counsel responded that he believed these claims lacked merit

20  but that if petitioner wished to present them he should file a petition for a writ of habeas corpus.

21  Id. at consecutive page 4 (page 2 of letter from Jeffrey Kross).  Petitioner argues that if counsel

22  believed there were no meritorious issues for appeal, he should have filed a brief based on People

23  v. Wende, 25 Cal. 3d 436 (1979) and allowed the appellate court to conduct its own examination

24  of the record to determine whether there were any cognizable issues.  Traverse at 8-9.  Petitioner

25  argues his appellate counsel was not acting in his best interests because he refused to investigate

26  and raise the issues suggested by petitioner.

1    The California Superior Court rejected these arguments with the following

2    reasoning:

> 3    Petitioner next claims ineffective assistance of appellate counsel, in
>      having claimed error under <u>People v. Superior Court (Romero)</u>
> 4    (1996) 13 Cal.4th 497 on appeal instead of submitting the appeal
>      as a no-issue brief under <u>People v. Wende</u> (1979) 25 Cal.3d 436.
> 5    The argument appears to be that had the Third District Court of
>      Appeal been presented with a <u>Wende</u> brief, it would have
> 6    independently reviewed the record and discovered some issue of
>      merit that would have resulted in a reversal of the judgment.
>
> 7
>
> 8    Petitioner, however, fails to identify what that issue would have
>      been.  Nor does petitioner show that the <u>Romero</u> issue was not at
>      least an arguable one that a reasonable attorney would have raised
> 9    on the appeal.  As such, the claim fails.

10   Lodg. Doc. 6 at 2-3.

11    The Sixth Amendment guarantees the effective assistance of counsel.  The United

12   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

13   <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

14   counsel, a petitioner must first show that, considering all the circumstances, counsel's

15   performance fell below an objective standard of reasonableness.  <u>Id.</u> at 687-88.  After a petitioner

16   identifies the acts or omissions that are alleged not to have been the result of reasonable

17   professional judgment, the court must determine whether, in light of all the circumstances, the

18   identified acts or omissions were outside the wide range of professionally competent assistance.

19   <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that

20   he was prejudiced by counsel's deficient performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice

21   is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

22   result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a

23   probability sufficient to undermine confidence in the outcome."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S.

24   at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

25   determine whether counsel's performance was deficient before examining the prejudice suffered

26   by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

1   ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

2   followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

3   697).

4           In assessing an ineffective assistance of counsel claim "[t]here is a strong

5   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

6   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

7   is in addition a strong presumption that counsel "exercised acceptable professional judgment in

8   all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

9   Strickland, 466 U.S. at 689).

10          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

11  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

12  However, an indigent defendant "does not have a constitutional right to compel appointed

13  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

14  professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751

15  (1983).  Counsel "must be allowed to decide what issues are to be pressed." Id.  Otherwise, the

16  ability of counsel to present the client's case in accord with counsel's professional evaluation

17  would be "seriously undermine[d]." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

18  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

19  not even particularly good appellate advocacy").  There is, of course, no obligation to raise

20  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

21  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

22  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

23  context, petitioner must demonstrate that, but for appellate counsel's errors, he probably would

24  have prevailed on appeal. Id. at 1434 n.9.

25  /////

26  /////

16

1    Petitioner has failed to demonstrate either defective performance or prejudice with

2  respect to this claim.  For the reasons explained above, petitioner's claims contained in the

3  instant petition lack merit.  Petitioner also has failed to establish that claims concerning the

4  victim's alleged perjury or claims of ineffective assistance of trial counsel have merit.  Appellate

5  counsel's decision to press only issues on appeal that he believed, in his professional judgment,

6  had more merit than the claims suggested by petitioner was "within the range of competence

7  demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).

8  There is no evidence in the record that appellate counsel's investigation was incomplete, that a

9  more thorough investigation would have revealed additional meritorious issues on appeal, or that

10  appellate counsel's decision not to raise the claims suggested by petitioner fell below an

11  objective standard of reasonableness.  Petitioner's appellate counsel did not have an ethical or

12  legal obligation to raise the issues suggested by petitioner.  Further, as noted by the California

13  Superior Court, the sentencing issue raised by petitioner's counsel on appeal was certainly

14  "arguable," given the circumstances of this case.  The state court determination with regard to

15  petitioner's claim of ineffective assistance of appellate counsel was not contrary to or an

16  unreasonable application of Strickland.  Accordingly, petitioner is not entitled to habeas relief.

17    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

18  application for a writ of habeas corpus be denied.

19    These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  /////

24  /////

25  /////

26  /////

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  February 26, 2008.

6

7                                                          _____
                                                           U.S. MAGISTRATE JUDGE
8

9

10   8:thomason1996.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26